IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION

| | |
|---|---|
| JOEL BRANDLEY, on behalf of himself and all others similarly situated, | CIVIL ACTION |
| | NO. _____ |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| JCS MILITARY SUPPORT SERVICES, INC., and MAGELLAN HEALTH, INC., | COLLECTIVE ACTION COMPLAINT |
| Defendants. | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, JOEL BRANDLEY ("Brandley" or "Plaintiff"), files this Complaint against JCS MILITARY SUPPORT SERVICES, INC. ("JCS"), and MAGELLAN HEALTH, INC. ("Magellan") (JCS and Magellan are collectively referred to as "Defendants" herein), showing in support as follows:

### I. NATURE OF THE CASE

1. This is a civil action brought by Plaintiff pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219 and the federal Portal-to-Portal Act, 29 U.S.C §§ 251-262, (collectively, "FLSA") for Defendants' failure to pay Plaintiff time and one-half his regular rate of pay for all hours worked over 40 during each seven day workweek.

2. At times relevant, Plaintiff worked for JCS and Magellan performing counseling related services as a Military Family Life Counselor ("MFLC") in connection with Magellan's Military and Family Life Counseling Program and contract with the United States Government.

3. MFLCs have a primary duty of serving as routers of information for service members and their families at and around the military bases to which they are assigned. Magellan contracts with the federal government to provide health care services to service members at those bases. Magellan supervised and controlled the MFLCs, but those MFLCs were issued paychecks and W-2s for their work by JCS pursuant to timesheets submitted to both Magellan and JCS.

4. Plaintiff and the putative collective action members were hourly paid employees of Defendants. Plaintiff and the putative collective action members regularly worked in excess of 40 hours per seven day workweek, but were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each and every seven day workweek during the time period relevant to this lawsuit. For example, Defendants knowingly required Plaintiff and the putative collective action members to work hours for which they were not compensated and/or knew or should have known that Plaintiff and the putative collective action members worked hours for which they were not compensated. As Plaintiff and the putative collective action members typically had no less than 40 hours a workweek recorded by Defendants, the aforementioned unpaid work resulted in unpaid overtime wages.

5. Plaintiff files this lawsuit individually and on behalf of all others similarly situated as a FLSA collective action pursuant to 29 U.S.C. § 216(b) against JCS and Magellan for their failure to pay them time and one-half their respective regular rates of pay for all hours worked over 40 during each seven-day workweek. Under the FLSA, JCS and Magellan are joint employers of Plaintiff and the putative collective action members and are jointly and severally liable for the FLSA damages sought in this lawsuit.

6. Plaintiff and the putative collective action members seek all damages available under the FLSA, including back wages for the three-year period prior to filing this lawsuit and forward, liquidated damages, legal fees, costs, and post-judgment interest.

## II. THE PARTIES, JURISDICTION, AND VENUE

### A. Plaintiff Joel Brandley

7. Brandley is a natural person who resides in Weber County, Utah. He has standing to file this lawsuit.

8. Brandley is a current employee of Defendants.

9. Brandley began working for Defendants in approximately November 2013, and continues to work for Defendants. Brandley's job duties include providing non-medical behavioral counseling services to active duty, reserve, and veteran military individuals and their families and dependents.

10. At all times relevant, Brandley is and has been paid an hourly rate of pay by Defendants.

### B. FLSA Overtime Collective Action Members

11. The FLSA Overtime Collective Action Members ("Collective Action Members") are all current and/or former MFLCs similarly situated to Plaintiff who: (a) work/worked for Magellan in connection with Magellan's Military and Family Life Counseling Program, but are/were issued paychecks and W2s from JCS; (b) are/were paid on an hourly rate basis; (c) had/have primary job duties/titles of MFLC; (d) work/worked more than 40 hours in any workweek; and (e) are/were not paid time and one-half their regular rates of pay for all hours worked over 40 in each such workweek by Magellan and/or JCS.

12. All Collective Action Members are similarly situated to Plaintiff, and to one another, within the meaning of Section 216(b) of the FLSA.

13. Plaintiff reserves the right to refine the definition of the FLSA Overtime Collective Action Class pursuant to amended pleadings, conditional certification/decertification proceedings, or as otherwise allowed by the Court.

C. **Defendant Magellan Health, Inc.**

14. On information and belief, Magellan is a foreign corporation incorporated under the laws of the State of Delaware. Magellan's headquarters is located at 4800 Scottsdale Road, Suite 4400, Scottsdale, Arizona 85251.

15. During all times relevant to this lawsuit, Magellan has done business in the State of Pennsylvania and throughout the United States.

16. Magellan operates within and around United States Military Bases across the United States. In connection with those business operations, MFLCs provide non-medical behavioral counseling services to active duty, reserve, and veteran military individuals and their families and dependents.

17. At all times relevant to this lawsuit, Magellan has been an "enterprise engaged in commerce" as defined by the FLSA.

18. At all times relevant to this lawsuit, Magellan employed, and continues to employ, two or more employees.

19. At all times relevant to this lawsuit, Magellan employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

20. For example, Magellan employed two or more employees who regularly engaged in commerce in their daily work. Examples of that commerce include providing non-medical behavioral counseling services to active duty, reserve, and veteran military individuals and their families and dependents throughout the United States.

21. Furthermore, Magellan employed two or more employees who regularly handled, sold, or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce. Examples of such goods and/or materials include communications equipment, vehicles, office supplies, and other goods and/or materials used by MFLCs in connection with performing their job duties for Magellan.

22. On information and belief, at all times relevant to this lawsuit, Magellan has had annual gross sales or business volume in excess of $500,000.

23. Magellan may be served with summons through its registered agent, Corporation Service Company, 2338 West Royal Palm Road, Suite J, Phoenix, Arizona 85021.

D. **Defendant JCS Military Support Services, Inc.**

24. On information and belief, JCS is a domestic corporation incorporated under the laws of the State of Pennsylvania. JCS's headquarters is located at 950 Haverford Road, Suite 200, Bryn Mawr, Pennsylvania 19010.

25. During all times relevant to this lawsuit, JCS has done business in the State of Pennsylvania and throughout the United States.

26. JCS operates within and around United States Military Bases across the United States, in which MFLCs provide non-medical behavioral counseling services to active duty, reserve, and veteran military individuals and their families and dependents.

27. At all times relevant to this lawsuit, JCS has been an "enterprise engaged in commerce" as defined by the FLSA.

28. At all times relevant to this lawsuit, JCS employed, and continues to employ, two or more employees.

29. At all times relevant to this lawsuit, JCS employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

30. For example, JCS employed two or more employees who regularly engaged in commerce in their daily work. Examples of that commerce include providing non-medical behavioral counseling services to active duty, reserve, and veteran military individuals and their families and dependents throughout the United States.

31. Furthermore, JCS employed two or more employees who regularly handled, sold, or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce. Examples of such goods and/or materials include communications equipment, vehicles, office supplies, and other goods and/or materials used by MFLCs in connection with performing their job duties for Magellan. in various military bases throughout the country.

32. On information and belief, at all times relevant to this lawsuit, JCS has had annual gross sales or business volume in excess of $500,000.

33. JCS may be served with summons at its registered office address, 950 Haverford Road, Suite 200, Bryn Mawr, Pennsylvania 19010.

### E. Jurisdiction and Venue

34. The Court has personal jurisdiction over Defendants based on both general and specific jurisdiction.

35. During all times relevant to this lawsuit, Defendants have done business in the State of Pennsylvania and continue to do business in the State of Pennsylvania.

36. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases his claims on federal law, namely the FLSA.

37. Venue is proper in the United States District Court for the Eastern District of Pennsylvania because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district. Furthermore, JCS maintains its headquarters and principal place of business in this judicial district.

38. Venue is proper in the Philadelphia Division of the United States District Court for the Eastern District of Pennsylvania because JCS maintains business operations and principal place of business in the Philadelphia Division and a substantial part of the events giving rise to Plaintiff's claims occurred, and continue to occur, in the Philadelphia Division.

## III. FACTUAL BACKGROUND

39. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

40. Magellan contracts with the United States Department of Defense to provide healthcare services at and around U.S. military bases. The services provided by MFLCs are an integral part of the Magellan's business because, without MFLCs, Magellan could not satisfy its obligations under its contracts with the federal government.

41. Magellan controls MFLCs' work and limits their freedom and discretion through various mechanisms, including (a) policies set forth in documents (e.g., Counselor Task Assignments ("CTAs") and other requirements) and (b) close supervision by direct supervisors and other Magellan managers.

42. According to Magellan's MFLC program website, Magellan contracts with certain third party companies to provide MFLCs as part of a federally mandated "obligation for the primary contractor to utilize business entities that are small business, minority-owned, women-owned, disabled-owned, veteran-owned, or disabled veteran-owned. Magellan works with several such businesses as part of the MFLC contract." *See MFLC – FAQ*, Magellan MFLC, http://www.magellanmflc.org/public/faq.aspx (last visited Jan. 5, 2017). On information and belief, JCS is one of those third party companies or subcontractors.

43. Additionally, Magellan's MFLC program website states, "If you become an employed MFLC rotational counselor for a Magellan subcontractor, you will work directly with Magellan for operational direction and guidance." *Id.*

44. Plaintiff and putative collective action members are current and former MFLCs who work/worked for Magellan, but are/were paid for their work by or through JCS. Plaintiff and the putative collective action members have/had primary job duties which consist/consisted of providing non-medical behavioral counseling services to active duty, reserve, and veteran military individuals and their families and dependents.

45. Magellan directs and controls all aspects of Plaintiff's and the putative collective action members' job duties, assignments, schedules, and tasks. Plaintiff and the putative collective action members report to Magellan supervisors directly.

46. The work performed by Plaintiff and the putative collective action members benefits Magellan and JCS at the same time. For example, Magellan enjoys/enjoyed the labor of Plaintiff and the putative collective action members, who are/were integral parts of its workforce performing MFLC services to satisfy Magellan's contract with the U.S. Government while JCS receives/received compensation from Magellan in return for providing Plaintiff and putative collective action members paychecks and W2s based on work performed by Plaintiff and the putative collective action members for Magellan.

47. Plaintiff and putative collective action members work/worked in and around United States Military Bases across the United States.

48. Defendants pay/paid Plaintiff and the putative collective action members an hourly rate of pay.

49. Plaintiff and the putative collective action members are/were non-exempt employees of Magellan and/or JCS under the FLSA. When they work/worked more than 40 hours per seven-day workweek, they are/were entitled to receive overtime premium compensation at the rate of one and one-half times their regular rates of pay for all such hours worked over 40.

50. Plaintiff and the putative collective action members respectively work/worked more than 40 hours per seven-day workweek on a regular basis.

51. Magellan and/or JCS did not, and do not, make and keep a record of all of the data required by 29 C.F.R. § 516.2(a) in connection with the work performed by Plaintiff and the putative collective action members for Magellan and/or JCS. For example, Magellan and/or JCS did not maintain accurate records of each hour worked per workday and workweek by Plaintiff and the putative collective action members.

52. Defendants have/had a practice and policy to generally pay Plaintiff and the putative collective action members for only 40 hours in a given seven-day workweek regardless of the amount of hours actually worked. For example, Defendants would not, and do not, generally allow Plaintiff and the putative collective action members to report their actual hours worked for Defendants in connection with their MFLC job duties. Furthermore, Defendants have/had a policy and/or practice of pressuring, coercing, and punishing Plaintiff and the putative collective action members into omitting/not reporting overtime hours worked and to keep the reported hours at approximately 40 per week.

53. Accordingly, Defendants knew and/or had reason to believe that Plaintiff and the putative collective action members were working more hours than were reported, and that they were working hours for which they were not paid. Defendants also knew that Plaintiff and the putative collective action members are/were regularly scheduled to work and reported 40 hours worked per workweek, respectively. As such, Defendants knew or had reason to believe that Plaintiff and the putative collective action members were working overtime hours for which they were not paid corresponding compensation, including overtime premium compensation. As a result of Defendants' practice and/or policy relative to the aforementioned "off-the-clock" work, Plaintiff and the putative collective action members are/were not paid all overtime compensation owed by Defendants pursuant to the FLSA.

54. That unpaid or "off-the-clock" work was integral and indispensable to the MFLCs' principal work activities for Defendants. For example, Plaintiff and the putative collective action members are/were required to be available after normal business hours and on weekends to support the needs of U.S. Military Service Members and their families and dependents. As a result, Plaintiff and the putative collective action members regularly performed

work rendering MFLC services for those Military Service Members and/or their families which was not reported as hours worked, and Defendants knew or had reason to believe those hours worked were not reported due to their aforementioned practice and policy of requiring MFLCs to underreport hours worked. Additionally, Plaintiff and putative collective action members are/were required to accommodate the requests of a military "Point of Contact" ("POC") onsite at the relevant military base. The POC would request that MFLCs attend various events and functions after normal business hours and on weekends, in addition to working their standard 40-hour workweeks. For example, if a group of military service members were deploying from or redeploying to the relevant military base during evening hours or on weekends, which was common, MFLCs were present for those occurrences to assist and inform military service members and/or their families. Defendants knew or had reason to believe that this work was performed by MFLCs, but not compensated. As a result, Plaintiff and the putative collective action members were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each and every workweek.

55. MFLCs are/were also often required to attend summer assignments at youth camps for children and dependents of Military Service Members that required offsite travel. MFLCs are/were required to work from approximately 6:00 a.m. through approximately 11:00 p.m. every day during the duration of the youth camp. However, Defendants' practice and/or policy is/was to not pay Plaintiff and putative collective action members for that work. This also resulted in Plaintiff and the putative collective action members not being paid time and one-half their respective regular rates of pay for all hours worked over 40 each and every workweek.

56. Defendants also have/had a policy and practice of not renewing employment contracts if MFLCs did not follow their instructions to report no more than 40 hours in a

workweek on timesheets. Because Defendants' policy and/or practice of not renewing employment contracts, Plaintiff and the putative collective action members typically underreported their hours worked even though they were, and are, still required to work those hours by Defendants and POCs. This results/resulted in Plaintiff and the putative collective action members not being paid time and one-half their respective regular rates of pay for all hours worked over 40 in each and every seven day workweek.

57. Defendants have/had notice of potential liability for unpaid overtime wages throughout the relevant time period pertaining to this lawsuit. Defendants' management and supervisors have/had knowledge of the obligation to pay overtime compensation to Plaintiff and Class Members for all hours worked over 40 in a given workweek. Defendants' management and supervisors also have/had knowledge that Plaintiff and the putative collective action members regularly worked off-the-clock hours and are/were not paid time and one-half their regular rates of pay for all hours worked over 40 in each and every workweek.

58. Plaintiff works and worked with numerous other hourly paid MFLC employees of Magellan and/or JCS. Like Plaintiff, those employees are/were subjected to Defendants' off-the-clock practices and/or policies described above which resulted in them not being paid for all hours worked, including not being paid time and one-half their respective regular rates of pay for all hours worked over 40 in each and every workweek. ,

### IV. CONTROLLING LEGAL RULES

59. "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

60. The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate the employee for hours worked over 40 "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1). The

"regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

61. Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

62. The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see also In re Enterprise Rent-a-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 467 (3rd Cir. 2012) [hereinafter *Enterprise*].

63. An employer-employee relationship exists "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F.R. § 791.2(b); *Enterprise*, 683 F.3d at 467.

64. A "single individual may stand in the relation of an employee to two or more employers at the same time under the [FLSA]." 29 C.F.R. § 791.2(a); *Enterprise*, 683 F.3d at 467. Furthermore, a "determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case." 29 C.F.R. § 791.2(a); *Enterprise*, 683 F.3d at 467.

65. "When faced with a question requiring examination of a potential joint employment relationship under the FLSA, we conclude that courts should consider: 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes." *Enterprise*, 683 F.3d at 469.

66. These factors "*do not constitute an exhaustive list* of all potentially relevant facts, and should not be blindly applied." *Id.* (internal quotation marks omitted). District courts should not be confined to "narrow legalistic definitions" and are required to consider all relevant evidence, "including evidence that does not fall neatly within one of the above factors." *Id.*

67. "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13.

68. Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a). Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time

earnings, total premium pay for overtime hours. 29 C.F.R. § 516.2(a). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

## V. PLAINTIFF'S FLSA CLAIMS

69. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

70. All conditions precedent to this suit, if any, have been fulfilled.

71. At relevant times, Defendants are/were eligible and covered employers under the FSLA. 29 U.S.C. § 203(d).

72. At relevant times, Magellan and JCS are/were joint employers of Plaintiff, as defined under the FLSA, and jointly and severally liable for Plaintiff's damages. 29 C.F.R. § 791.2.

73. At relevant times, Defendants are/have been enterprises engaged in commerce under the FLSA. 29 U.S.C. § 203(s)(1)(A).

74. Plaintiff works on or around a United States Military Base as an employee of Defendants. 29 U.S.C. § 203(e).

75. Plaintiff is paid an hourly rate of pay by Defendants.

76. Plaintiff regularly worked/works in excess of 40 hours per seven-day workweek as an employee of Defendants during the time period relevant to this lawsuit.

77. Defendants are/were required to pay Plaintiff time and one-half his regular rate of pay for all hours worked over 40 in a seven-day workweek. 29 U.S.C. § 2017(a)(1).

78. Defendants fail/failed to pay Plaintiff overtime compensation at one and one-half times his regular rate of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit.

## VIII. DAMAGES AND PRAYER

89. Plaintiff asks that summons be issued relative to Defendants and that he and the FLSA Overtime Collective Action Members be awarded a judgment against Magellan and/or JCS for the following:

   a. Certification of Plaintiff's FLSA overtime causes of action as a collective action with the requirement of notice of this lawsuit being provided to the putative collective action members;

   b. Actual damages in the amount of unpaid overtime wages;

   c. Liquidated damages;

   d. Post-judgment interest;

   e. Costs;

   f. Reasonable attorneys' fees; and

   g. All other relief to which Plaintiff and the FLSA Overtime Collective Action Members are entitled.

Respectfully submitted,

MORGAN & PAUL, PLLC

_____
GREGORY G. PAUL
PA I.D. Number: 83334
First and Market Building
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
(412) 259-8375
(888) 822-9421 (facsimile)
gregpaul@morgan-paul.com


BARON & BUDD, P.C.


s/ Allen R. Vaught
_____
Allen R. Vaught
TX Bar No. 24004966
Melinda Arbuckle
TX Bar No. 24080773
Farsheed Fozouni
TX Bar No. 24097705
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
(214) 521-3605 – Telephone
(214) 520-1181 – Facsimile
avaught@baronbudd.com
marbuckl@baronbudd.com
ffozouni@baronbudd.com

ATTORNEYS FOR PLAINTIFF